**PBT**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA SHIVONE<br>10911 Nandina Court, 2nd Floor<br>Philadelphia, Pa 19116 | CIVIL ACTION |

PAMELA SHIVONE
10911 Nandina Court, 2nd Floor
Philadelphia, Pa 19116

       *Plaintiff,*

    vs.

WASHINGTON MUTUAL BANK, F.A.
1201 Third Avenue
Seattle, Washington 98101

    and

WASHINGTON MUTUAL
HOME LOANS, INC.
6 Hillock Lane
Chadds Ford, Pa 19317

    and

PHELAN HALLINAN & SCHMIEG, LLP
One Center Plaza, Suite 1400
Philadelphia, Pa 19103

    and

LAWRENCE T. PHELAN, ESQUIRE
c/o Phelan Hallinan & Schmieg, LLP
One Center Plaza, Suite 1400
Philadelphia, Pa 19103

    and

FRANCIS S. HALLINAN, ESQUIRE
c/o Phelan Hallinan & Schmieg, LLP
One Center Plaza, Suite 1400
Philadelphia, Pa 19103

    and

CIVIL ACTION

NO.    **07 1038**

**JURY TRIAL DEMANDED**

```
                                               :
FULL SPECTRUM LEGAL SERVICES, INC.             :
400 Fellowship Road, Suite 220                 :
Mt. Laurel, NJ 08054                           :
                                               :
        and                                    :
                                               :
MORTGAGE ELECTRONIC REGISTRATION               :
SYSTEMS, INC.                                  :
c/o The Prentice-Hall Corporation System, Inc  :
2711 Centerville Road, Suite 400               :
Wilmington, De 19808                           :
                                               :
        and                                    :
                                               :
SHAPIRO & KREISMAN, LLC (Illinois)             :
4201 Lake Cook Road                            :
Northbrook, Illinois 60062                     :
                                               :
        and                                    :
                                               :
SHAPIRO & KREISMAN, LLC (Pennsylvania)         :
2520 Renaissance Blvd, Suite 150               :
King of Prussia, Pa. 19406                     :
                                               :
        and                                    :
                                               :
THE LOGS GROUP, LLC.                           :
4201 Lake Cook Road                            :
Northbrook, Illinois 60062                     :
                                               :
        and                                    :
                                               :
JOSEPH REJENT, ESQUIRE                         :
c/o Shapiro & Kreisman, LLC                    :
2520 Renaissance Blvd, Suite 150               :
King of Prussia, Pa. 19406                     :
                                               :
        and                                    :
                                               :
DAVID FEIN, ESQUIRE                            :
c/o Shapiro & Kreisman, LLC                    :
2520 Renaissance Blvd, Suite 150               :
```

King of Prussia, Pa. 19406        :
        :
    and        :
        :
GERALD M. SHAPIRO, ESQUIRE    :
4201 Lake Cook Road        :
Northbrook, Illinois 60062      :
        :
    and        :
        :
DAVID S. KRIESMAN, ESQUIRE   :
4201 Lake Cook Road        :
Northbrook, Illinois 60062      :
        :
    and        :
        :
FIRST AMERICAN NATIONAL    :
DEFAULT OUTSOURCING, LLC    :
f/k/a LOGS Financial Services, Inc.  :
8435 North Stemmons Freeway    :
Dallas, TX 75247        :
        :
        *Defendants*.    :
_____:

# COMPLAINT

## PARTIES

1.    Plaintiff Pamela Shivone is a citizen and resident of the Commonwealth of Pennsylvania who resides at the above captioned address.

2.    Upon information and belief, Defendant Washington Mutual Bank, FA ("Washington Mutual") is a banking corporation organized and existing under the laws of Washington State, with a principal place of business 1201 Third Avenue, Seattle, Washington 98101.

3.    Upon information and belief, Washington Mutual Home Loans, Inc. ("WMHLI") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal

place of business as set forth in the caption above. Upon further information and belief, WMHLI is a wholly owned subsidiary of Washington Mutual, Inc. which is also the parent corporation of Defendant Washington Mutual Bank, FA.

4.      Upon information and belief, Defendant Phelan Hallinan & Schmeig, LLP ("PH&S") is a law firm organized as a Limited Liability Partnership under the Laws of the Commonwealth of Pennsylvania doing business at the above captioned address.

5.      Upon information and belief, Defendant Lawrence T. Phelan, Esquire is an attorney licensed to practice law in the Commonwealth of Pennsylvania and who maintains a business address as set forth in the caption above.  Upon information and belief, Defendant Phelan is, and at all relevant times was, the managing partner of Defendant PH&S is responsible for oversight of that law firm.

6.      Upon information and belief, Defendant Francis S. Hallinan, Esquire is an attorney licensed to practice law in the Commonwealth of Pennsylvania and who maintains a business address as set forth in the caption above.  Upon information and belief, Defendant Hallinan is, and at all relevant times was, described by Defendant PH&S as being responsible for oversight of the PH&S law firm as follows:

> Francis S. Hallinan is the Administrative Partner of Phelan Hallinan & Schmieg, LLP. He oversees the day-to-day operations of both offices, and is the "behind the scenes" manager who ensures that the job gets done.

See http://www.fedphe-pa.com/pages/FSH.htm.

7.      Upon information and belief, Defendant Full Spectrum Legal Services, Inc. ("FSLS") is a corporation organized under the laws of the State of New Jersey with its principal place of

business at the above captioned address.

8.     Upon further information and belief, FSLS holds itself out as a provider of the following services to law firms in Pennsylvania and New Jersey, including, *inter alia*: process service, mortgage and judgment searches, skip trace investigations, certificate of regularity analysis, publication of legal notices and tax certification research.

9.     Upon information and belief, Defendant Mortgage Electronic Registration Services, Inc. ("MERS") is a Delaware corporation with registered agent at the above captioned address.

### The Shapiro and Kriesman/LOGS Defendants

10.    Upon information and belief, as of March 2004 as more fully set forth below, Defendant Shapiro & Kriesman, LLC (Illinois) was a limited liability company (LLC) organized under the laws of the State of Illinois with an address as captioned above. Further, upon information and belief, the members of Shapiro & Kriesman, LLC (Illinois) are citizens of states other than the Commonwealth of Pennsylvania. Upon further information and belief, Shapiro and Kriesman, LLC is/was a law firm engaged in the practice of mortgage foreclosure and is part (and the original office) of the LOGS Network (an assumed name of The LOGS Group, LLC), as defined and more fully described below.

11.    Upon information and belief, Defendant The LOGS Group, LLC ("LOGS") is a limited liability company organized under the laws of the State of Illinois with an address as captioned above. Upon information and belief, LOGS stands for the **L**aw **O**ffices of **G**erald **S**hapiro. Further, upon information and belief, the members of LOGS are citizens of states other than the Commonwealth of Pennsylvania. Upon information and belief, LOGS also uses the assumed names "LOGS REO Services" and "the LOGS Network".

12. Upon information and belief, LOGS, using the assumed name of The LOGS Network, operates (and at all relevant times hereto, operated) law practices in over thirty (30) states (including Shapiro & Kreisman, LLC (Illinois) and Shapiro & Kreisman LLC (Pennsylvania)) designed to handle mass numbers of residential mortgage foreclosure actions in State court systems (including Pennsylvania) on behalf of lenders and mortgage servicers throughout the United States.

13. Upon information and belief, Defendant Joseph Rejent, Esquire ("Rejent") is an attorney licensed to practice law in the Commonwealth of Pennsylvania and who worked at Shapiro & Kreisman in King of Prussia, Pennsylvania in 2004. Upon information and belief, Defendant Rejent maintains a business address in Pennsylvania as set forth above.

14. Upon Information and belief, Defendant David Fein, Esquire ("Fein") is an attorney licensed to practice law in the Commonwealth of Pennsylvania and who worked at Shapiro & Kreisman in King of Prussia, Pennsylvania in 2004. Upon information and belief, Defendant Rejent maintains a business address in Pennsylvania as set forth above.

15. Upon information and belief, Defendant Gerald M. Shapiro, Esquire ("Shapiro") is an attorney licensed to practice law in Illinois and Florida, but not in Pennsylvania, with a business address as set forth above and who is a resident of the State of Florida. Upon information and belief, Defendant Shapiro is a member of Shapiro & Kreisman LLC (Illinois) and is also the Chairman, Chief Executive Officer and co-founder of LOGS.

16. Upon information and belief, LOGS describes Mr. Shapiro by stating, *inter alia*, that:

> Gerald M. Shapiro is co-founder with David S. Kreisman of the LOGS Network. Under his guidance, the law offices of Gerald Shapiro have developed into a preeminent network of law firms and title agencies that provides national representation to mortgage lenders. Memberships include the American Bar Association, Illinois State Bar Association and the Florida Bar Association. Mr. Shapiro also is an active member of the Mortgage Bankers Association of America, the National Council of Savings Institutions and the majority of state Mortgage Bankers Associations.
>
> Mr. Shapiro, by introducing a multi-state network of title companies and law firms and connecting them via a proprietary web-hosted software system, invented the field counsel industry that serves residential mortgage banking. His network held a virtual monopoly on all foreclosure and bankruptcy work nationwide until the early 1990s. In addition, he preempted the entire industry by creating the "cradle to grave" concept through business developments in title, closing, document preparation, foreclosures, REO, outsourcing, collection, and debt acquisition businesses. He holds a Bachelor of Science Degree from Northwestern University and a law degree from DePaul University School of Law. He began his legal career in the tax department of Arthur Young in Chicago, and he went into private practice in 1971.

www.logs.com/about_us/leadership/shapiro.html

17. Upon information and belief, Defendant David S. Kreisman, Esquire ("Kreisman") is an attorney licensed to practice law in Illinois and Florida, but not in Pennsylvania, with a business address as set forth above and who resides in the State of Florida. Upon information and belief, Defendant Kreisman is a member of Shapiro and Kreisman LLC (Illinois) and is also the Vice Chairman and co-founder of LOGS.

18. Upon information and belief, LOGS describes Mr. Kreisman by stating, *inter alia* that:

> he directs national operations for all LOGS Network legal offices and is directly responsible for management and supervision of more than 25 partnership law firms, title operations, and trustee companies operating in more than 30 states and the District of Columbia. Mr. Kreisman is also responsible for legal oversight for approximately 125 network attorneys and 30 outside lawfirms.

www.logs.com/about_us/leadership/kreisman.html

19.   Upon information and belief, Defendants Gerald Shapiro and David Kreisman control each

office of the LOGS Network through LOGS.  In this regard, upon information and belief;

   a.   LOGS maintains a lockbox in Illinois which receives <u>all</u> funds (the gross receivables)

   from all the law firms in the LOGS Network;

   b.   LOGS sets the budgets for each law firm within the LOGS Network;

   c.   After receiving the gross receivables for each law firm; LOGS will then remit back

   to the lawfirms moneys to meet each offices expenses;

   d.   LOGS is responsible for practice management at each law firm in the LOGS

   Network;

   e.   LOGS sets the salaries of each attorney at each law firm in the LOGS Network;

   f.   LOGS determines the bonuses of each attorney at each law firm in the LOGS

   Network which is measured mainly by  the amount of cases a handled by particular

   attorney.

20.   Upon information and belief, as of March 2004, there was no limited liability company

known as Shapiro & Kreisman, LLC registered in Pennsylvania as either a domestic or

foreign business entity.  Nonetheless, as set forth below, there was a law firm operating under

the name of "Shapiro & Kreisman, LLC" in Pennsylvania  at 2520 Renaissance Blvd, Suite

150, King of Prussia, Pa 19406 in March 2004 and before.  It was lawyers using the name

of this law firm that sued Plaintiff on behalf of MERS and/or Washington Mutual in March

2004 in the Philadelphia Court of Common Pleas in an action styled <u>Mortgage Electronic</u>

<u>Registration Systems, Inc. v. Pamela and Richard Shivone</u>, C.C.P. Phila Cty., March Term

2004 No. 6135 (the "2004 Mortgage Foreclosure Action").

21.     An online search of the records of the Commonwealth of Pennsylvania, Department of State

        Corporations Bureau reflects that on April 25, 2005, an LLC was created and registered in

        Pennsylvania *for the first time* in the name of "Shapiro & Kreisman, LLC" which was more

        than a year after the 2004 Mortgage Foreclosure Action was filed.

22.     Meanwhile, Shapiro & Kreisman, LLC (Illinois) has been in existence since April 2, 1996

        according to the online records of the State of Illinois.

23.     Additionally, an online search of the records of the Commonwealth of Pennsylvania,

        Department of State Corporations Bureau, reflects that on April 6, 2004, a limited liability

        <u>partnership</u> was created and registered in Pennsylvania *for the first time* in the name of

        "Shapiro & Kreisman, LLP" which was twelve days after the filing of the 2004 Mortgage

        Foreclosure Action.  According to Pennsylvania's online Department of State records,

        Shapiro & Kreisman, LLP dissolved on June 10, 2005.  Upon information and belief, the

        partners of Shapiro & Kreisman, LLP included, defendants Gerald Shapiro and David

        Kreisman.

24.     Accordingly, upon information and belief, the Shapiro & Kreisman, LLC responsible for

        filing the 2004 Mortgage Foreclosure Action was Shapiro & Kreisman, LLC (Illinois).

        Alternatively, the Shapiro & Kreisman, LLC responsible for filing the 2004 Mortgage

        Foreclosure Action was an unincorporated association of individuals including Defendants

        Shapiro and Kreisman which has been designated as Shapiro & Kreisman, LLC

        (Pennsylvania) in the caption above and which may have been a predecessor of Shapiro &

        Kreisman, LLP which was formed just twelve days after the 2004 Mortgage Foreclosure

Action was commenced. Accordingly, throughout this Complaint, the law firm which brought the 2004 Mortgage Foreclosure Action is referred to simply as "Shapiro & Kreisman".

25. Upon information and belief, Shapiro & Kriesman is part of LOGS' national network of law firms (operated under the assumed name "the LOGS Network") owned and/or controlled by defendants Gerald M. Shapiro and David Kreisman. See, e.g. In re Rivera, 342 B.R. 435, 439 (Bankr. D.N.J. 2006). Moreover, Defendants Gerald M. Shapiro and David Kreisman are principals in and responsible for the management of LOGS and each lawfirm in The LOGS Network.

26. Upon further information and belief, Defendants Gerald M. Shapiro and David Kreisman are both "equity partners" and/or principals in each of the network lawfirms they own and/or control including the Shapiro & Kreisman entity operating in Pennsylvania in 2004.

27. Upon information and belief, Defendant First American National Default Outsourcing, LLC ("FANDO") is or was a Limited Liability Company organized under the State of Illinois. Upon further information and belief, FANDO was formerly known as LOGS Financial Services, Inc. ("LOGS FInancial") as it was created to purchase LOGS Financial Services, Inc in or about July 2005.

28. Upon information and belief, LOGS Financial, prior to its purchase by FANDO, was owned and controlled by Defendants LOGS Group, LLC, Gerald Shapiro and David Kreisman and was simply an alternate name and/or alter ego for these defendants. In this regard, while there appears to be a separate incorporation for LOGS FInancial in the State of Illinois, in numerous press releases, LOGS FInancial describes itself as follows:

Founder and CEO Gerald M. Shapiro originally established the LOGS Legal Network in 1971 as a network of law firms and trustee companies providing national representation to mortgage lenders. He built the company into an industry leader through the development of the "cradle to grave" concept within the default management services sector. In 1999, the company changed its name to LOGS Financial Services, Inc. to better describe its comprehensive offerings.

These press releases also usually state that for more information, people should click in a link to the LOGS Group, LLC website.

## JURISDICTION AND VENUE

29. Jurisdiction is founded upon the existence of a Federal question under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq., pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over the State law claims is founded pursuant to 28 U.S.C. § 1367

30. Venue lies in this Judicial District as the events which give rise to the claims occurred in this Judicial District.

## FACTS

**The Property, the Mortgage and the Recorded Assignments**

31. On or about April 17, 2006 Pamela Shivone and Richard Shivone (then Husband and Wife) purchased 2311 South Darien Street, Philadelphia Pennsylvania (the "Property").

32. On or about April 24, 1997 Pamela Shivone and Richard Shivone executed a Mortgage in favor of Crusader Bank (the "Mortgage") on the Property securing the principal amount of $17,350.00 in favor of Crusader Bank. Exhibit 1.

33. Upon information and belief, the Mortgage on the Property was recorded on May 1, 1997 in

Philadelphia County, Pennsylvania.

34.     Upon information and belief, on or about May 20, 1997, Crusader Bank executed a written assignment of the Mortgage transferring and assigning its interest to Fidelity Bond and Mortgage (the "First Assignment").  Exhibit 2.

35.     Upon information and belief, the First Assignment to Fidelity Bond and Mortgage was recorded with the Recorder of Deeds in Philadelphia County, Pennsylvania on or about February 25, 2000 with a document identification number of 50041157.

36.     In or about the end of the year 1997, Pamela and Richard Shivone permanently separated and are currently in the process of obtaining a divorce.

37.     In or about the end of the year 1997, Pamela Shivone moved out of the Property leaving Richard Shivone in residence at the Property.

38.     Upon information and belief, on or about August 6, 1999, Fidelity Bond and Mortgage executed a written assignment of the Mortgage transferring and assigning its interest to Summit Bank (the "Second Assignment").  Exhibit 3.

39.     Upon information and belief, the Second Assignment to Summit Bank was recorded in Philadelphia County, Pennsylvania on or about February 25, 2000 with a document identification number of 50041158.

40.     Upon information and belief, on or about September 25, 2006, "Bank of America, N.A., successor by merger, Fleet National Bank s/b/m to Summit Bank" executed a written assignment of the Mortgage transferring and assigning its interest to Defendant Washington Mutual Bank, FA (the "Third Assignment"). Exhibit 4.  This assignment specifically stated that the consideration for the sale, assignment, and transfer of the Mortgage was paid at the

time of execution of this Assignment which was September 25, 2006. <u>Id.</u>

41. Upon information and belief, the Third Assignment to Defendant Washington Mutual Bank, FA was recorded in Philadelphia County, Pennsylvania on or about October October 26, 2006, with a document identification number of 51559060

42. Despite the fact that, upon information and belief, (1) Defendant Washington Mutual did not purchase the Mortgage or have a written assignment until September 25, 2006 and (2) MERS was never an assignee of the Mortgage; both of these entities wrongfully sued Plaintiff in two separate mortgage foreclosure actions as more fully set forth below.

**Shapiro & Kreisman's Business as of March 2004**

43. As of March 2004, the LOGS Network of lawfirms including, Shapiro & Kreisman, was engaged in the business of bringing mass numbers of residential foreclosure proceedings on behalf of various financial institutions including, but not limited to, Washington Mutual.

44. Upon information and belief, there was a vast amount of competition between the LOGS Network of lawfirms and their various competitors to attract greater amounts of business from lending institutions and their service providers and to process each individual foreclosure proceeding in as short an amount of time as possible. In this regard, a New Jersey Bankruptcy Court, in matter involving a New Jersey LOGS Network lawfirm's submission of recycled pre-signed client certifications in over 250 separate cases, stated in a published Opinion as follows:

> Mr. Kreisman then testified, reviewing the Shapiro and Kreisman history, including involvement in New Jersey back into the 1980s. He graphically described the volume and time pressures impacting on mortgagees' local counsel.

Then in 1990 HUD came out with their time frame requirements and said you had to complete a case in so many days, weeks, months, in various states. And then, subsequently VA did the same, followed by the GSE's, Freddie Mac, and Fannie Mae. And, they all came up with time frames. And so, we had to learn to slice and dice the -- not slice and dice, that's not the way it worked, to manage the work flow better than we did before. And, that continues to today as not only has the time frames shrunk, but there's more competition and everybody's trying to outdo each other in terms of impressing clients as to their capability of moving work.

Your Honor, I believe that -- and, we'll get back to the answer -- there is probably -- I'm going to -- this is a guess -- maybe eight billion dollars worth of files sitting in our offices. Our clients don't expect us to have them sit there and not move them. Nor, would we expect not to move them. So, it becomes a process driven business.

In re Rivera, 342 B.R. 435, 451 (Bankr. D.N.J. 2006).

45. Moreover, upon information and belief, it is believed that Shapiro & Kreisman filed more than a thousand Mortgage Foreclosure cases in the Court of Common Pleas of Philadelphia County alone in the year 2004.

46. Upon information and belief, despite the fact that the LOGS Network including Shapiro and Kreisman in Pennsylvania were increasingly handling a massive amount of mortgage foreclosures, there was no real oversight or management of the network lawfirms by its owners and managers, Defendants Gerald Shapiro and David Kreisman. In this regard, Defendant Shapiro testified in the Rivera case as follows:

Q.      [I]n terms of oversight of the Shapiro & Diaz [in New Jersey] or any of the network firms, what was the management structure if you know?

A.     Quite honestly, I'm not involved in operations [of any of the network lawfirms] and I just met the personnel [from the New Jersey Office, including its managing attorney] out in the hall right before court.

                                    *     *     *

Q.     [D]oes anyone from the – to your knowledge – does anyone from the LOGS Group LL[C] do any kind of management or quality control performance with respect to Shapiro & Diaz?

A.     We have outside auditors that audit all our lawfirms in terms of the accounting function.

Q.     All right, that would be on the financial side.

A.     Yeah.

Q.     How about the performance side?

A.     I don't get involved in, you know, in operations. ... I would have no knowledge of any procedural or the local custom or practice in any state.  I haven't practiced law, per se, since 1975.

In Re Rivera, U.S. Bankruptcy Court, D. N.J., No. 01-42625 (MS), docket entry 85, N.T. of

12/14/2005 at pages 21, 24-25.  Similarly, Defendant Kreisman testified as follows:

A.     ... While I might say that I'm kind of the general manager of the network of lawfirms, I don't run the office.  Okay.  I rely on the people we hire to do that.  I can't be in every office every day to look at everything.  Never intended to do that, and although my life changed from a practicing attorney to a management type person by necessity, if our people, the people we hire as partners and the supervisory roles that they have to play in the local office, if they fail me, then we fail.

                                    *     *     *

Q.     Mr. Kreisman, I'm just trying to understand a little bit more about the structure of the field office that you have, of Shapiro & Kreisman. I think you testified that your focus has always been on law firm performance?

A.     Correct.

Q.     What does that mean, law firm performance?  How do you judge it?

A.   A combination of things.  There's the productivity of the firm.  Just how much work they're getting done with how many people.  You look at budgets ... you look at time frames, are we getting the work done quickly enough to satisfy the industry requirements. ...

* * *

Q.   All right, performing well is getting the work out the door, right?  That the essence of it, right?

A.   Most likely, yes.

* * *

Q.   And what is the LOGS Legal Network?

A.   That's a – the LOGS Legal Network is the law firm that Mr. Shapiro and I have an ownership interest in.

Q.   So in other words, that Shapiro & Kreisman which is your law firm in Illinois?

A.   Its just one of the thirty, yes.

* * *

Q.   And is one of Shapiro & Kreisman's responsibility to manage field counsel?

A.   Well, there's perhaps an answer that isn't quite the way it – Mr. Shapiro and Mr. Kreisman or at least Mr. Kreisman at least, manages the field counsel regardless of whether the [default services] agreement [with the bank/client] says so or not.  So whether it's a formalized contract or not, when I say manage it, I hope to run a good operation in all the offices and I assume that's what the client expects us to do.  Shapiro and Kreisman itself an entity doesn't manage the field counsel.  The principals of Shapiro and Kreisman are the principals in the other firms and we are responsible for managing, at least in a large sense, those operations.  Obviously we don't do it day to day.

Id. at 52, 56, 58, 63, 65-66.

47.   In addition to creating The LOGS Network of lawfirms, Defendants Gerald Shapiro and David Keisman also created a company known as LOGS Financial Services, Inc. ("LOGS Financial").

48. As set forth above, LOGS Financial was eventually purchased by Defendant FANDO in July 2005.

49. As of March 2004, LOGS Financial (either as a separately incorporated entity, or under an assumed name for the LOGS Group, LLC) was a service provider for various financial institutions charged with handling defaulted residential mortgages, including Washington Mutual.

50. Upon information and belief, Washington Mutual had a services agreement with LOGS Financial (which was also signed by LOGS Group, LLC and/or Shapiro & Kreisman) wherein, LOGS Financial was to provide collection services to Washington Mutual on defaulted residential mortgages.

51. Upon information and belief, in the year 2004, LOGS Financial physically maintained a business presence at Washington Mutual's offices in Milwaukee Wisconsin for the purpose of providing to Washington Mutual collection services on defaulted residential mortgages. Upon further information and belief, LOGS financial, at the agreement of Washington Mutual, had full access to Washington Mutual's loan servicing computers and records in order to provide debt collection services on defaulted loans.

52. Upon information and belief, LOGS Financial participated in the selection of and/or referral to counsel on behalf of Washington Mutual.

53. Upon information and belief, LOGS Financial acted as the client contact on behalf of Washington Mutual with respect to dealings with LOGS Network attorneys.

54. Upon information and belief, LOGS Financial was responsible for obtaining information about defaulted residential mortgages held by Washington Mutual to provide to a LOGS

Network attorney in order for that attorney to prepare a complaint against a Mortgagor such as Plaintiff Pamela Shivone.

55. Upon information and belief, LOGS Financial provided to all LOGS Network lawfirms a procedures manual entitled "ATTORNEY EXPECTATIONS PROCEDURES DOCUMENT Client - Washington Mutual" (the "Procedures Manual"). This Procedures Manual specified the procedures for handling Logs Network counsel requests for documents such as verifications and affidavits. Specifically, the Procedures Manual was Characterized by FANDO f/k/a LOGS Financial as setting forth procedures whereby requests were "to be faxed or sent to a specific [LOGS Financial] email address and that executed affidavits would be returned to counsel, typically in 2 to 3 days from request, following their review and execution by [LOGS Financial] staff." In Re Rivera, U.S. Bankruptcy Court, D. N.J., No. 01-42625 (MS), docket entry 74, Declaration of Fred Zakula, Senior Vice President of FANDO f/k/a LOGS Financial at 3 citing Procedures Manual at 17, attached as Exhibit A thereto.

56. Upon information and belief, despite the stated policy as set forth in the Procedures Manual that a LOGS Financial employee was to review and execute verifications and affidavits used in litigation, no such review was commonly performed by LOGS Financial Employees. Instead, upon information and belief, the stated written policy was a shame and deliberately avoided/disregarded and violated, all with the knowledge and/or acquiesance of the principals and supervisory personnel controlling the operations of Defendants, Washington Mutual, LOGS Financial, LOGS as well as Shapiro & Kreisman. In this regard, upon information and belief, it was a common practice for LOGS Financial employees to pre-sign

batches of verifications which were supplied to counsel for use in cases which had not been

reviewed by the LOGS Financial employee. In this regard, in the <u>In Re Rivera</u> matter, one

such LOGS Financial Employee, Amirah Shahid, submitted a declaration as follows:

¶1.  I am a former employee of LOGS Financia, Inc. ("LOGS [Financial]") and First American Default Outsourcing, LLC ("FANDO") and have personal knowledge of the facts contained in this certification.

¶2.  I worked at LOGS [Financial] from approximately August 2003 untile the company was purchased by FANDO. I then worked at FANDO until approximately August 2004.

¶3.  As a bankruptcy specialist, I was involved in the preparation of certifications and other documents submitted in support of motions for relief from bankruptcy stays. Specifically, I participated in sending financial information regarding defaulting loans, such as payment histories, outstanding balances and incurred late charges, to the law firms engaged to file such motions and certifications.

\* \* \*

¶8.  **I am aware that, in certain instances, pre-signed signature pages were employed in certifications submitted to courts for mortgages serviced by LOGS [Financial] and FANDO. I am also aware that at least some of these pre-signed signature pages bore my signature.**

¶9.  **During my employment by LOGS [Financial] and FANDO, I did sign multiple blank signature pages for use by the law firms working with LOGS [Financial] and FANDO. Specifically, those law firms would attach those signature pages to certifications containing the financial information provided by LOGS [Financial] and FANDO.**

¶10. **I signed the signature pages in bulk at the direction of my supervisor, Mashandi Robinson.** Ms. Robinson explained to me that another employee, a male whose name I cannot recall, was leaving the company. That male employee, I was told, had previously been tasked with pre-signing the signature pages. I questioned Ms. Robinson as to whether it was appropriate for me to sign the signature pages in advance. **She answered that it was the company's normal procedure.**

¶11. I have no recollection of being told by anyone at FANDO or LOGS [Financial] that either company had a policy prohibiting the use of pre-signed pages for certifications or that such use violated any policy, rule or regulation of either company. I certainly never thought I was doing anything improper by signing blank signature pages that would be attached to certifications containing the information provided by FANDO or LOGS [Financial].

¶12. My understanding of the procedure for use of pre-signed signature pages was that, with respect to a specific mortgage, LOGS [Financial] and later FANDO would obtain the information necessary for a court submission from the mortgage company. LOGS [Financial] and later FANDO would then forward the information to the law firm. The law firm, with the help of LOGS [Financial] and later FANDO, would then verify the accuracy and correctness of the financial data to ensure that no false or misleading information was submitted to any court. **The law firm would then draft the necessary certification containing that information and attach my pre-signed signature page before submitting the document to the court.**

Exhibit 23, In Re Rivera, U.S. Bankruptcy Court, D. N.J., No. 01-42625 (MS), docket entry 89, Declaration of Amirah Shahid (emphasis supplied).

57. Upon information and belief, the use of pre-signed batches of signature pages for use in verified submissions to the Court extended to mortgage foreclosure actions brought by Shapiro & Kreisman in Pennsylvania as set forth in more detail below and potentially elsewhere. Upon information and belief, this procedure was designed to circumvent the requirements of State Courts, including the Court of Common Pleas in Philadelphia, Pennsylvania, with respect to their requirement as a precondition for filing pleadings that such pleadings contain bonafide verifications of corporate officers of corporate parties that the information in the complaint has actually been reviewed by the party and is true and correct to the information knowledge and belief of the party.

58. As determined by the Bankruptcy Court in New Jersey, the use of of pre-signed batches of signature pages for use in verified submissions to the Court by LOGS Network Attorneys was a result of breaches of Defendants Gerald Shapiro and David Kreisman's oversight responsibilities:

> Having had an early and rather clear view of the future of mortgage loan servicing, these attorneys initiated a niche industry. LOGS [Financial] and the S&K network of law firms [LOGS Network] were the result. They marketed their speed and efficiency in handling high volume, diverse state foreclosures.

> Efficiency in processing is not necessarily antithetical to deliberate and cautious judicial review of residential foreclosure action. But pressures to speed up the foreclosure process (and related bankruptcy relief) can, if unchecked, overcome important safeguards. The family residence remains the backbone of the American economy -- it is still a goal for those who would strive, and the most valuable and enduring asset for those who have achieved a financial foothold. "E-foreclosure" is not accepted public policy, and should not intrigue even those who would hawk bonds securitized by bundles of home mortgages. In fact, foreclosure is a cost to both the foreclosing party and the homeowner. At least while home values have been escalating, good business sense has dictated that mortgagors be given multiple chances to cure defaults (as with Ms. Rivera).   As mortgage defaults increase (and particularly if real estate values remain flat or decline) there should be heightened concern for process issues.

> The Shapiro and Kreisman back-office blitz in bankruptcy (to free up foreclosures) turned S&D, the captive [New Jersey LOGS Network] law firm, into an unprofessional appendage to LOGS [Financial] (and later, FANDO). Sadly, under the pressure to produce, Ms. Schwartz and Mr. Diaz [of S&D] seem to have lost sight of their professional responsibility. This loss was facilitated because Messrs. Shapiro and Kreisman did not care to establish quality controls to assure that professional standards were being maintained. Time of processing paper was the highest value.

In re Rivera, 342 B.R. 435, 465-466 (Bankr. D.N.J. 2006) (footnote omitted).

59. Upon information and belief, Defendants violations of their obligations, *inter alia*, to obtain proper verifications of pleadings resulted from their negligence and/or

deliberate indifference (if not with actual criminal intent) to the violation of the legal requirements imposed by various State courts regarding the submission of *bona fide* verifications/affidavits. Upon information and belief, Defendants deliberate indifference was motivated by crass greed to make more money in the mass handling of residential foreclosure actions, regardless of the propriety of same or the procedural safeguards requiring verified information.

**The 2004 Mortgage Foreclosure Action**

60. On or about March 26, 2004, Defendants Fein and Joseph Rejent, Esquire, in the course and scope of their employment for Shapiro & Kriesman filed a mortgage foreclosure action in the Philadelphia County Court of Common Pleas naming Mortgage Electronic Registration Systems, Inc. ("MERS") as the plaintiff against Pamela and Richard Shivone in an action styled, <u>Mortgage Electronic Registration Systems, Inc. v. Pamela and Richard Shivone</u>, C.C.P. Phila Cty., March Term 2004 No. 6135 (the "2004 Mortgage Foreclosure Action").

61. The 2004 Mortgage Foreclosure Action Complaint, attached as Exhibit 5, was verified by Jeanne R. Nedeau, purportedly the "Att. Asst. Secretary" for "Washington Mutual Bank, FA" acting as "Agent for Mortgage Electronic Registration Systems, Inc."

62. In the 2004 Mortgage Foreclosure Action Complaint, Defendants Washington Mutual, MERS, Rejent, Fein and/or Shapiro & Kriesman averred, *inter alia*, that (1) Washington Mutual Bank FA, was the successor by merger to Summit Bank and (2) that Washington Mutual Bank, FA, had assigned the Mortgage to MERS in a written assignment "As

Recorded" as follows:

1. (a) <u>Parties to Mortgage</u>:
    <u>Mortgagee</u>:  Crusader Bank
    <u>Mortgagors</u>:  Pamela Ann Shivone and Richard Gregory Shivone

    (b) <u>Date of Mortgage</u>: April 24, 1997

    (c) <u>Place and Date of Record of Mortgage</u>:
    Recorder of Deeds
    Philadelphia County
    Mortgage Book JTD 0611 Page 561
    Date: July 2, 1997

    The Mortgage is a matter of public record and is incorporated herein as provided by Pa. R.C.P. No. 1019(G).  A true and correct copy of the Mortgage is attached hereto and marked as Exhibit "A" and incorporated herein by reference.

    (d) Assignments:
    Assignor: Crusader Bank
    Assignee: Fidelity Bond and Mortgage
    As Recorded

    Assignor: Fidelity Bond and Mortgage
    Assignee: Summit Bank
    Date of Assignment: August 6, 1999
    Recording Date: February 25, 2000
    Book: DOC ID#  50041158

    Assignor: Washington Mutual Bank, FA successor by Merger to Summit Bank
    Assignee: Mortgage Electronic Registration Systems, Inc.
    As Recorded

2. Plaintiff [MERS] is, therefore, either the original Mortgagee named in the mortgage, the legal successor in interest to the original Mortgage, or is the present holder of the mortgage by virtue of the above-described Assignments.

Exhibit 5.

63. In the 2004 Mortgage Foreclosure Action Complaint, Shapiro and Kreisman inserted a notice at the third page of Exhibit 5 stating that they were debt collectors as follows:

> **PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT YOU ARE ADVISED THAT THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

64. The 2004 Mortgage Foreclosure Action Complaint was signed by Defendant Rejent and listed Defendant Fein as co-counsel both of whom were acting as employees of Shapiro & Kreisman.

65. Upon Information and belief, the 2004 Mortgage Foreclosure Action Complaint contained materially false information including, the following:

a. That Washington Mutual was a "successor by Merger to Summit Bank"

b. That Washington Mutual had assigned the Mortgage to MERS;

c. That there was a recorded written assignment from Washington Mutual to MERS;

d. Neither Washington Mutual Bank, FA nor MERS was the legal owner of the Mortgage at the time the 2004 Mortgage Foreclosure Action Complaint was filed.

66. Moreover, upon information and belief, MERS was never the original Mortgagee named in the mortgage, the legal successor in interest to the original Mortgage, or the present holder of the mortgage by virtue any assignments.

67. This Complaint was verified by Jeanne R. Nedeau as follows:

<u>VERIFICATION</u>

The undersigned, an officer of the Corporation which is the Plaintiff in the foregoing Complaint or of the Corporation which is the servicing Agent of Plaintiff, and being authorized to make this verification on behalf of Plaintiff, hereby verifies that the facts set forth in the foregoing Complaint are taken

from records maintained by persons supervised by the undersigned who maintain the business records of the Mortgage held by Plaintiff in the ordinary course of business and that those facts are true and correct to the best of the knowledge, information and belief of the undersigned.

I UNDERSTAND THAT FALSE STATEMENTS HEREIN ARE MADE SUBJECT TO THE PENALTIES OF 18 PA.C.S. §4904 RELATING TO UNSWORN FALSIFICATIONS TO AUTHORITIES

Date: **3/23/04**                     *Jeanne R. Nedeau*
                          Name:        Jeanne R. Nedeau
                          Title:       Att. Asst. Secretary
                          Company:     Washington Mutual Bank, FA
                                       **Agent for Mortgage Electronic**
                                       **Registration Systems, Inc.**

(Script fonts handwritten into verification which was otherwise typed).

68. The original of this verification filed with the Prothonotary of the Philadelphia Court of Common Pleas reflects that Ms. Nedeau's signature *"Jeanne R. Nedeau"* appears either in black ink or as a photocopy while the date "**3/23/04**" and "**Agent for Mortgage Electronic Registration Systems, Inc.**" appear in blue ink and, upon information and belief, in a different handwriting. Moreover, the handwriting in blue ink, upon information and belief, also appears to be written in the same hand as the handwritten portions (except for the attorney signature) of the Court of Common Pleas of Philadelphia County Trial Division Civil Cover Sheet required to be attached to the Complaint. See e.g. color copies of the Civil Cover Sheet and Verification pages in the 2004 Mortgage Foreclosure Action attached hereto as Exhibit 6. Accordingly, upon information and belief, the handwriting in blue ink is actually the writing of an employee of the law firm of Shapiro & Kreisman.

69. While Jeanne Nedeau is represented on the verification to be an "Att. Asst. Secretary"

25

for "Washington Mutual Bank, FA", upon information and belief, Ms. Nedeau was actually an employee of LOGS Financial which was acting as a service provider to Washington Mutual. If so, then Ms. Nedeau was falsely representing herself as an officer, or at least an employee, of Washington Mutual in a wrongful attempt to circumvent Pennsylvania's rules requiring verifications by a corporate officer for a corporate party embodied in, e.g., Pennsylvania Rule of Civil procedure 1024.

70. Upon information and belief, Ms. Nedeau did not actually review any allegations in the 2004 Mortgage Foreclosure Action Complaint. Rather, upon information and belief, the verification attached tot he 2004 Mortgage Foreclosure Action Complaint was selected by Shapiro & Kreisman from a pre-signed batch of verifications which were dated by Shapiro & Kreisman personnel and appended by Shapiro & Kreisman personnel onto Complaints to false impression to the Court and the parties that the Complaint was properly verified. Accordingly, the verification attached to the 2004 Mortgage Foreclosure Action falsely verified factual allegations in a Complaint which was never reviewed by any officer or employee of Washington Mutual or even reviewed by Ms. Nedeau.

71. In this regard, the instant Plaintiff's counsel reviewed 29 complaints in the hundreds of mortgage foreclosure actions filed by Shapiro & Kreisman with the Philadelphia County Court of Common Pleas from January 1, 2004 to June 1, 2004 and whic were not verified by an attorney. See color photographs of the verification pages, and in

most cases the Civil cover sheets, taken by counsel in these 29 actions and attached as Exhibits 6 (the verification and cover sheet in the 2004 Mortgage Foreclosure Action and 7 (the phtographs from the other 28 cases).   Eighteen (18) of the Complaints were verified by Ms. Nedeau, eight (8) were verified by Mary Ann Kasabuske, two (2) were verified by Angela Moore and one (1) was verified by Anita Vergil.  In each of these 29 complaints, the signature of the verifier appeared in either black ink or as photocopied.  Two of the 29 verifications were undated.  Id. In other other 27, the verification dates appear in blue ink.  Where counsel was able to compare the dates on the verifications with those on the civil cover sheets, 18 of 19 verifications were dated on the same date as the civil cover sheet and the handwriting on the verifications in blue ink appears to match the handwriting on the civil cover sheets which also appears in blue ink.  Id.

72.   Accordingly, upon information and belief, Defendants, including Shapiro & Kresiman and Washington Mutual, were using pre-signed verification pages as described above to circumvent the procedural safeguards requiring that the plaintiff actually review the facts alleged in a Civil Action.

73.   Upon information and belief, such conduct resulted from a civil conspiracy to abuse and circumvent the procedural safeguards imposed by the Courts of Pennsylvania to have a *bona fide* verification of the facts under penalty of perjury.

74.   Upon information and belief, this practice of obtaining batches of pre-signed

verifications persisted from well before the 2004 Mortgage Foreclosure Action was filed against Plaintiff until in or about September 2006 when the Judge in <u>In re Rivera</u>, supra, issued sua sponte, an Order to Show Cause raising the issue that LOGS was using pre-signed certifications in New Jersey bankruptcy court. See that Order to Show Cause dated _____ attached as Exhibit 8.

75. Upon information and belief, the verification of Ms. Nedeau attached to the 2004 Mortgage Foreclosure Action contained materially false information as, *inter alia*, Washington Mutual was neither the named plaintiff in the 2004 Mortgage Foreclosure Action Complaint nor a "Servicing Agent" of the named Plaintiff, MERS.

76. Upon information and belief, the above verification contained materially false information as, *inter alia*, the "records maintained" by Washington Mutual Bank FA never reflected that:

   a.    Washington Mutual was a "successor by Merger to Summit Bank"

   b.    That Washington Mutual had assigned the Mortgage to MERS;

   c.    That there was a recorded written assignment from Washington Mutual to MERS;

   d.    Washington Mutual Bank, FA or MERS was the legal owner by a valid assignment of the Mortgage at the time the 2004 Mortgage Foreclosure Action Complaint was filed.

77. Upon information and belief, Shapiro & Kreisman, Fein, and Rejent knew, or should have known the false statements in the 2004 Mortgage Foreclosure Action Complaint and verification were false when made or made in reckless disregard of the truth thereof.

78. The use of false statements in verifications including the verification attached to the

2004 Mortgage Foreclosure Action violates Pennsylvania's Rules of Civil Procedure and criminal laws. In this regard, Pennsylvania Rule of Civil Procedure 1024(a) requires that:

> (a) Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified. The signer need not aver the source of the information or expectation of ability to prove the averment or denial at the trial. A pleading may be verified upon personal knowledge as to a part and upon information and belief as to the remainder.

Relatedly, Pennsylvania Rule of civil Procedure defines "verified" as follows:

> "verified," when used in reference to a written statement of fact by the signer, means supported by oath or affirmation or made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities;

Further, 18 Pa. C.S. § 4904 makes it a crime to make a false statement as follows:

> § 4904. Unsworn falsification to authorities
>
> (a) IN GENERAL. --A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
>
> (1) makes any written false statement which he does not believe to be true;
>
> (2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or
>
> (3) submits or invites reliance on any sample, specimen, map, boundary mark, or other object which he knows to be false.
>
> (b) STATEMENTS "UNDER PENALTY." --A person commits a misdemeanor of the third degree if he makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.

79.     Further, if Ms. Nedeau was in fact an employee of LOGS Financial or anyone other than Washington Mutual (as she represented herself to be), then Defendants further violated Pennsylvania Rule of Civil Procedure 1024 (c) which provides that:

> (c) The verification shall be made by one or more of the parties filing the pleading unless all the parties (1) lack sufficient knowledge or information, or (2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of the person's information as to matters not stated upon his or her own knowledge and the reason why the verification is not made by a party.

80.     Moreover, attorneys such as Defendants Fein and Rejent, are required to sign pleadings filed with the court.  Pa. R. Civ. P. 1023.1(a).  Such a signature is a ceritification by the attorney the the attorney has "read the pleading" and that "to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purposes ... [and] (3) the factual allegations have evidentiary support". Pa. R. Civ. P. 1023.1(c).

81.     Defendant's signing of the Complaint in the 2004 Mortgage Foreclosure Action did not comply with the foregoing standards as there no evidentiary factual support for the facts alleged in the 2004 Mortgage Foreclosure Complaint.

82.     Further, upon information and belief, due to the mass volume of foreclosures handled by the Defendants Shapiro & Kreisman, Defendants Fein and Rejent did not carefully read each pleading they signed their names to.

83. Upon information and belief, Washington Mutual was actually an authorized agent and/or apparent agent of MERS as of March 2004.

84. Upon further information and belief, MERS specifically authorizes employees of banks such as Washington Mutual to verify pleadings on MERS's behalf where MERS is the named plaintiff.

85. The 2004 Mortgage Foreclosure Action Complaint attached purported notices issued to Ms. Shivone under Pennsylvania Act 91, 35 P.S. §§ 1680.402c(a) and 1680.403-C dated January 27, 2004 issued by "Washington Mutual" and which falsely, deceptively, and misleadingly listed the "Lender" as "Washington Mutual Home Loans, Inc."

86. As of the commencement of the 2004 Mortgage Foreclosure Action, neither Washington Mutual not WMHLI was a legal holder of the Mortgage and neither had a right to commence Mortgage Foreclosure Proceedings. Nevertheless, either Washington Mutual or WMHLI or both wrongfully reported to one or more credit reporting agencies that they had in fact commenced mortgage foreclosure proceedings and reported the lender to one or more of the credit reporting agencies as "Washington Mutual Home" with an address at P.O. Box 3139, Milwaukee Wisconsin.

87. Upon information and belief, the aforesaid Act 91 notices were issued by Washington Mutual for the express purpose allowing Washington Mutual to commence the 2004 Mortgage Foreclosure Action.

88. Upon information and belief, at no time was the Plaintiff indebted to Washington Mutual

Home Loans, Inc. ("WMHLI") and at no time was WMHLI the lender to Plaintiff or ever the legal holder of the Mortgage.

89. Upon information and belief, the Act 91 notices attached to the 2004 Mortgage Foreclosure Action Complaint were defective, abusive, false, misleading and deceptive as at the time the notices were issued, neither Washington Mutual Bank, FA, any of its related corporations (including WMHLI) nor MERS was a valid assignee of the Mortgage and had no legal right to issue Act 91 notices or start and/or maintain the mortgage foreclosure process or proceedings.

90. Despite the fact that Act 91 notices expressly stated that the "Lender" was WMHLI, the Act 91 Notice also indicated on the first page that it was issued by

> Washington Mutual
> P.O. Box 44118
> Jacksonville, FL 32231-4118

Upon information and belief, this address is not an address for Defendant WMHLI, but rather is an address used by Defendant Washington Mutual. Accordingly, the Act 91 notices appear to have been issued by one or both of the defendants WMHLI and Washington Mutual. Moreover, the notice states "WE ARE A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

91. Upon information and belief, Shapiro & Kreisman, unsuccessfully attempted to serve Plaintiff with the 2004 Mortgage Foreclosure Action Complaint and then withdrew the action by filing a praecipe to settle, discontinue and end the action on June 8, 2004 in which they falsely represented to the Court that the matter had been "**settle[d]**" thereby falsely

representing and or implying to the Court and the world at large that the matter was not being unilaterally dismissed but instead was settled with the consent of Plaintiff. See a copy of the docket in the 2004 Mortgage Foreclosure Action attached as Exhibit 9 and the Praecipe to Settle Discontinue and End attached as Exhibit 10 (emphasis supplied).

92. Because she was never served with the 2004 Mortgage Foreclosure Action Complaint, Plaintiff Pamela Shivone did not know the action had been filed against her at the time the action was commenced and never agreed to "settle" the action.

93. Plaintiff did not know about the 2004 Mortgage Foreclosure Action until she discovered it in search of Court records on her own well after the 2004 Mortgage Foreclosure Action was terminated by Defendants.

94. Upon learning about the 2004 Mortgage Foreclosure Action, Plaintiff experienced great shock, concern, anxiety, sleeplessness, weeping, apprehension, fear, dread, panic, trepidation and other damages. In this regard, Plaintiff had no idea who MERS was, why she had been sued by MERS and was concerned that some unknown creditor would take what little she had. Plaintiffs' shock and fears, etc., were also was heightened because she is a single parent struggling to make ends meet and she was concerned that she may incur legal and other expenses and losses as a result of an unknown claim by MERS and would have to go into even greater debt. Moreover, Plaintiffs' concerns, anxiety, etc., were also heightened as she has a daughter with special needs and is struggling to provide a secure and safe environment for her daughter.

**COLLECTION EFFORTS BY WASHINGTON MUTUAL**
**AFTER THE 2004 MORTGAGE FORECLOSURE ACTION**

95. On December 15, 2005, Washington Mutual faxed Plaintiff a letter stating that "WE ARE A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT", that "WE MAY REPORT/HAVE REPORTED INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT" and informing Plaintiff that payment of the mortgage was two months late.

96. On January 26, 2006, the Washington Mutual "Collections Department" faxed Plaintiff a letter stating that "WE ARE A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT", "WE HAVE TOLD A CREDIT BUREAU ABOUT A LATE PAYMENT, MISSED PAYMENT OR OTHER DEFAULT ON YOUR ACCOUNT. THIS INFORMATION MAY BE REFLECTED IN YOUR CREDIT REPORT."

**THE 2006 WASHINGTON MUTUAL LAWSUIT**

97. On or about March 7, 2006, Washington Mutual, through its counsel Defendants Phelan and Hallinan of Defendant PH&S, filed a mortgage foreclosure action against Plaintiff in the Philadelphia Court of Common Pleas, entitled Washington Mutual Bank, FA v. Richard and Pamela Shivone, March Term 2006 No. 000245 (the "2006 Mortgage Foreclosure Action").

98. The Complaint in the 2006 Mortgage Foreclosure Action filed on or about March 7, 2006 is attached hereto as Exhibit 11.

99. As of the commencement of the 2006 Mortgage Foreclosure Action, neither

Washington Mutual not WMHLI was a legal holder of the Mortgage and neither had a right to commence Mortgage Foreclosure Proceedings. Nevertheless, either Washington Mutual or WMHLI or both wrongfully reported to one or more credit reporting agencies that they had in fact commenced mortgage foreclosure proceedings and reported the lender to one or more of the credit reporting agencies as "Washington Mutual Home" with an address at P.O. Box 3139, Milwaukee Wisconsin.

100. Upon information and belief, at the time that Defendants Phelan, Hallinan, PH&S and Washington Mutual filed the 2006 Mortgage Foreclosure Action, Washington Mutual had no right or entitlement to bring such an action as it was **not** the mortgagee, had **not** been assigned the mortgage by Summit Bank or any of Summit's successors or assigns, and was not a legal party in interest to the Mortgage.

101. In the Complaint filed in the 2006 Mortgage Foreclosure Action, Washington Mutual and FS&G nevertheless falsely averred that:

> On 04/24/1997 mortgator(s) made, executed and delivered a mortgage upon the premises hereinafter described to CRUSADER BANK which mortgage is recorded in the Office of the Recorder of PHILADELPHIA County, in Mortgage Book: J 1161 Page 561. By assignment of Mortgage recorded 02/25/2000 the mortgage was Assigned to Summit Bank which Assignment is recorded in Assignment of Mortgage Document ID 50041158. ***PLAINTIFF is now the legal owner of the mortgage and is in the process of formalizing an assignment of same***.

Exhibit 11 at ¶ 3 (emphasis supplied).

102. In intentional, wanton, reckless or negligent disregard of the allegation in the aforesaid complaint that Washington Mutual had not received an assignment of the Mortgage,

Defendant Francis Hallinan, Esquire of PH&S improperly verified the Complaint in the 2006 Mortgage Foreclosure Action instead of an employee of Washington Mutual. In this regard, Mr. Hallinan stated in his verification that the verification of his client "could not obtained within the time allowed for filing the pleading."

103. Upon information and belief, Defendant Hallian's verification was a deliberate, or at least a recklessly made, falsehood as there was no pressing time limitation for filing the Complaint and there was no time limit "for filing the pleading" which prevented obtaining an appropriate verification signed by the party plaintiff.

104. Moreover, Defendant Hallinan's verification stated that "it is counsel's intention to substitute a verification from Plaintiff as soon as it is received by counsel." This statement also appears to be a falsehood as no substitute verification was executed or filed until more than six months later and then only after Pamela Shivone filed preliminary objections related to the verification.

105. The Complaint in the 2006 Mortgage Foreclosure Action attached purported notices issued to Ms. Shivone by Washington Mutual under Pennsylvania Act 91, 35 P.S. §§ 1680.402c(a) and 1680.403-C dated January 19, 2006 which purported to state that Washington Mutual was then the mortgagee of Plaintiff.

106. Upon information and belief, the Act 91 notices attached to the Complaint in the 2006 Mortgage Foreclosure Action were defective, false and abusive as at the time the notices were issued, Washington Mutual FA was not a valid assignee of the Mortgage and had no legal right to issue Act 91 notices or start the mortgage foreclosure process or proceedings.

36

Upon information and belief, the Act 91 notices were issued by Washington Mutual for the express purpose allowing Washington Mutual to commence the 2006 Mortgage Foreclosure Action.

107. In the Complaint in the 2006 Mortgage Foreclosure Action, Washington Mutual improperly requested "an *in rem* Judgment against the Defenfant(s)" including Pamela Shivone personally, instead of against the property. See e.g., Gangwere's Appeal, 36 Pa. 466, 469-70 (1860), ("although a mortgage is a contract, and the process authorized to issue thereon results in a judgment, yet, in common parlance, such a judgment is never spoken of as a judgment upon contract, but as a judgment on mortgage. And it is a very peculiar judgment. It simply ascertains of record the breach of some condition on the mortgage, and authorizes a sale of the pledge by a writ of levari facias. It has not the lien of ordinary judgments, and it establishes no debt against the mortgagor or terre tenant, for which an execution would issue against his goods and chattels, land and tenements generally."; See also Beneficial Consumer Discount Co. v. Hamlin, 263 Pa. Super. 393, 408 (Pa. Super. Ct. 1979); Shaffer v. Heitner, 433 U.S. 186, 199 (U.S. 1977) ("If jurisdiction is based on the court's power over property within its territory, the action is called "in rem" or "quasi in rem." The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner").

108. In April 2006, Washington Mutual and/or PH&S Plaintiff had hand delivered to the law offices of Neil E. Jokelson & Associates, P.C. an unmarked envelope containing the Complaint in the 2006 Mortgage Foreclosure Action and left this envelope on a counter in an unattended waiting area.

109. Ms. Shivone, who is now and was then employed as a receptionist of Neil Jokelson & Associates, P.C., was not present at the law offices of Neil E. Jokelson & Associates, P.C. at the time this envelope was left in the unattended waiting area.

110. Neither Neil E. Jokelson & Associates, P.C. nor any attorney at the firm had entered their appearance in this case as of April 2006 and did not enter an appearance until August 4, 2006.

111. Neither Neil E. Jokelson & Associates, P.C. nor any person at the firm other than Ms. Shivone was authorized to receive service of the Complaint in April 2006 or at any time until August 4, 2006.

112. Leaving an envelope at Neil E. Jokelson & Associates, P.C. as described above in April 2006 was not proper service upon Ms. Shivone and this was known, or should have been known, to Washington Mutual and PH&S and their agents acting on their behalf.

113. As of May 16, 2006, neither Washington Mutual, Phelan, Hallinan nor PH&S had served Pamela Shivone with process in the 2006 Mortgage Foreclosure Action nor had they filed a proof service.

114. Upon information and belief, neither Phelan, Hallinan, PH&S nor Washington Mutual made any attempt at serving Plaintiff Pamela Shivone after they left the aforesaid envelope in the unattended waiting room of the office Neil E. Jokelson & Associates, P.C. in April 2006 and before May 16, 2006.

115. Upon information and belief, PH&S, Phelan, Hallinan and Washington Mutual knew and/or should have known that as of May 16, 2006, it had not served Pamela Shivone with the Complaint.

116. On May 16, 2006, Defendant Francis Hallinan, Esquire of PH&S, acting as counsel to Washington Mutual issued a notice of intention to take a default judgment pursuant to Pa. R. C. P. 237.1 and 237.5 addressed to Pamela Shivone, but at an address similar to that of Neil E. Jokelson & Associates, P.C. as follows:

> Pamela Shivone
> 230 South Broad Street, Suite 4802
> Philadelphia, Pa. 19148

See Exhibit 12.

117. The proper address of Neil E. Jokelson & Associates, P.C. is as follows:

> Neil E. Jokelson & Associates,
> 230 South Broad Street, Suite 801
> Philadelphia Pa. 19102

118. The May 16, 2006 Notice of intention to take a default judgment was improperly issued without any reasonable basis or cause as neither Washington Mutual, Phelan, Hallinan nor PH&S had served Pamela Shivone and therefore the time to respond to the Complaint had not yet commenced.

119. The May 16, 2006 Notice of Intention to take a Default Judgment addressed to Pamela Shivone (although improperly addressed) was received by Neil E. Jokelson & Associates, P.C. on May 17, 2006 and then reviewed by Plaintiff. This improperly issued notice of intention to take a default judgment resulted in further harassment, damage and terror to Plaintiff.

120. The May 16, 2006, Notice of Intention to take default judgment was improper and an abuse of process as no service upon Ms. Shivone had been made. Neither PH&S, Phelan, Hallinan nor Washington Mutual had any reasonable basis to believe that service had been made upon

Ms. Shivone and, upon information and belief, Phelan, Hallinan, PH&S and/or Washington Mutual actually knew that Ms. Shivone had not been served.

121. On May 19, 2006, Derek Jokelson, Esquire wrote to Francis Hallinan of PH&S in regard to the above described Notice of Intention to take a Default Judgment as follows:

> About a month ago, someone left an envelope with a complaint in the above captioned matter in our reception area which was unattended at the time. More recently, we have received letters addressed to Pamela Shivone and Richard Shivone with notices of intention to take default judgment. While we may represent Pamela Shivone in this action, we do not represent Richard Shivone. Further, **we are not authorized to accept service** for anyone in relation to this matter. You should also know that Pamela Shivone does not live in the premises secured by the mortgage.

> It is clear that there has been no actual service, at least with respect to anything sent to our offices. Further, Ms. Shivone informs me that she has never been served with the complaint in this case. Accordingly, you are in no position to attempt to take a default judgment against anyone. If you believe you have proper service upon Ms. Shivone, please inform me. Otherwise, any further action by you would be an abuse of process.

Exhibit 13 (emphasis in original). There was never a response to this letter.

122. As of May 25, 2006, Washington Mutual had not served Pamela Shivone with process in the 2006 Mortgage Foreclosure Action.

123. On May 25, 2006, PH&S, acting on their own behalf and as agent for Washington Mutual filed a Praecipe to Reinstate the Complaint in the 2006 Mortgage Foreclosure Action for service upon Pamela Shivone.

124. Upon information and belief, prior to June 6, 2006, Washington Mutual through PH&S hired defendant FSLS to serve process upon Pamela Shivone.

125.    On June 6, 2006, Plaintiff Pamela Shivone found a notice hanging from the door to her

residence at 10911 Nandina Court stating as follows:

**LEGAL NOTICE!!!**
**Recipient: <u>Pamela Shivone</u>**

**You have officially been served a Legal**
**Notice by a Lawful Process Server**
**authorized by**

**BUCKS/PHILADELPHIA COUNTY**
**SUPERIOR COURT.**

**SUPERIOR COURT DOCUMENTS**
**Must be delivered to you within**
**FIVE (5) BUSINESS DAYS.**

**DOCKET NO: 000245**

**You must call the contact number listed**
**Below and make arrangements for**
**weekday delivery.  Documents will be**
**delivered during BUSINESS HOURS.**

**Only the named recipient or a household**
**member Age 18 or older may accept**
**service.**

**Documents no! delivered within Five (5)**
**Business Days will be returned to the**
**Superior Court as a**

**FAILURE TO ACCEPT**
**SERVICE.**

**(856) 889-6797**
**A.P.S. Mulvan**

Exhibit 14.

126. This notice was false and misleading for a host of reasons including, but not limited to, the following:

   a. Ms. Shivone had not "officially been served a Legal Notice";

   b. The process served was not "authorized by BUCKS/PHILADELPHIA SUPERIOR COURT";

   c. There is no "BUCKS/PHILADELPHIA SUPERIOR COURT"

   d. The documents were not from the "SUPERIOR COURT";

   e. There was no reason why the "SUPERIOR COURT DOCUMENTS [or any other documents] Must be delivered to you within FIVE (5) Business Days";

   f. The Docket number referenced was incomplete;

   g. It was false that Ms. Shivone "**must** call the contact number listed" in the Noticee and "make arrangements for weekday delivery .. During business hours" (emphasis supplied).

   h. It was not true that "only the named recipient or a household member age 18 or older may accept service"

   i. It was not true that "documents not delivered within Five (5) Business Days will returned to the Superior Court [or any court] as a FAILURE TO ACCEPT SERVICE"

127. Upon receiving this abusive notice from Defendant FSLS, and in reliance upon the truth of the notice, Plaintiff experienced great anxiety, sleeplessness, crying, apprehension, fear, dread, panic, trepidation and other damages. Plaintiff felt scared and threatened by the

wording of the notice and understood from the notice that she needed to take immediate action within five (5) days to prevent immediate harm to herself and her daughter or to prevent being in jeopardy with the Court. Further, since Plaintiff had never had any dealings in Bucks County which she thought could be the subject of litigation, she was afraid of additional legal and credit problems and concerned about her ability to pay lawyers if necessary in Bucks county. Plaintiff was also concerned that there was an unknown action looming in the "Bucks/Philadelphia Superior Court".

128. In reliance upon this notice, Plaintiff called the telephone number on the notice and spoke, upon information and belief, with a representative of Defendant FSLS to inform FSLS the times when she is usually home hoping to avoid any jeopardy.

129. On July 11 2006, Washington Mutual, through PH&S, filed a Motion for Service Pursuant to a Special Order of Court allowing service by posting the Complaint in the 2006 Mortgage Foreclosure Action at the Property and mailing copies to, *inter alia*, Pamela Shivone at her actual address in Nandina Court captioned above.

130. On July 13, 2006, the Court granted an order for the alternative means of service requested.

131. PH&S filed an affidavit of Service upon Pamela Shivone on July 27, 2006.

132. On August 4, 2006, Counsel for Ms. Shivone entered their appearance on her behalf.

133. On August 28, 2006, Counsel for Ms. Shivone filed Preliminary Objections to the Complaint in the 2006 Mortgage Foreclosure Action (Exhibit 15) on the basis that the Complaint was not properly verified and as there was no apparent assignment of the property to Washington Mutual. In this regard, the Preliminary Objections averred that:

a. There was no proper verification of the Complaint;

b. There was no written assignment of the Mortgage to Washington Mutual;

c. No assignment had been attached; and

d. Washington Mutual lacked capacity to sue Pamela Shivone;

134. On or about September 12, 2006, Derek Jokelson Esquire spoke with counsel for Washington Mutual at PH&S and informed counsel, *inter alia*, that the Complaint had been improperly filed as there was no assignment and asked that Complaint be withdrawn with respect to Ms. Shivone.

135. On September 15, 2006, Counsel at PH&S, on behalf of Washington Mutual and PH&S (and under the management of Defendants Phelan and Hallinan) mailed a letter to Derek Jokelson seeking to settle the matter by way of a consent judgment and as a means of "avoid[ing] additional fees and costs being expended by [Washington Mutual] and subsequently added onto [Ms. Shivones]'s debt. Exhibit 16.

136. Upon information and belief, Counsel at PH&S, on behalf of Washington Mutual, proposed entering a consent judgment which wrongly and falsely asserted that Washington Mutual "is the holder of the Mortgage" on the Property.

137. On September 15, 2006, PH&S acting as counsel to Washington Mutual filed a response to the Preliminary Objections. Exhibit 17.

138. Simultaneous with the filing of the answers to the Preliminary, PH&S acting as counsel to Washington Mutual filed a Praecipe to Substitute the verification of Amy Wies, Vice President of Washington Mutual for Mr. Hallinan's prior verification.

139. In the Answers to the Preliminary Objections, PH&S acting as counsel to Washington

Mutual, attached the original Mortgage to Crusader Bank, the First Assignment from Crusader to Fidelity Bond and Mortgage, the Second Assignment from Fidelity Bond and Mortgage to Summit Bank, but did not attach or even aver an assignment from Summit Bank to Washington Mutual. Instead, PH&S boldly averred, without any support, that "Plaintiff is now legal owner of the mortgage and is in the process of formalizing an Assignment." Upon information and belief this was a false statement as Washington Mutual had never had a written assignment of the Mortgage. Washington Mutual also falsely argued, without any support, in this submission that:

> Washington Mutual, F.A. paid for the Assignment of Mortgage to Summit Bank, and therefore it has the same security that Summit Bank (assignor) had, namely, the mortgage signed by Defendants. ... the transfer of the mortgage was effectuated upon transfer of the consideration, not upon recording or execution of the Assignment document. Thus, Plaintiff is now the legal owner of the mortgage and may institute foreclosure proceedings

Exhibit 17 at the response to ¶ 7 and a page 3 of the Memorandum of Law.

140.    However, there was no assignment to Washington Mutual of the Mortgage until September 25, 2006. In this regard, on September 25, 2006, and unknown to Ms. Shivone at the time, a purported assignment was signed by Muriel Adams, Vice President of "Bank of America, N.A., successor by merger, Fleet National Bank s/b/m to Summit Bank" (defined as Assignor) which states that the Assignor:

> for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it <u>in hand paid by **Washington Mutual Bank F.A. "Assignee"** at the time of execution hereof</u>, sell, assign, transfer and set over unto the said assignee, the receipt whereof is hereby acknowledged, does hereby grant, bargain its successors and assigns ALL THAT CERTAIN Indenture of

Mortgage given and executed by **Pamela Ann Shivone and Gregory Richard Shivone** to **Crusader Bank** . . .

Exhibit 4 (Bold emphasis in original, underlined emphasis supplied).

141. Accordingly, it is clear that there was no assignment to Washington Mutual until "the time of execution" of the assignment which is dated September 25, 2006. See Exhibit 4.

142. Further, upon information and belief, Washington Mutual could not have owned the mortgage until the written assignment was executed on September 25, 2006.

143. Upon information and belief, on October 26, 2006, the above described assignment was recorded in Philadelphia County.

144. After obtaining the assignment and during the pendency of the 2006 Mortgage Foreclosure Action, neither Washington Mutual nor PH&S issued a new Act 91 notice to Ms. Shivone.

145. On November 6, 2006, the Philadelphia Court of Common Pleas granted Ms. Shivone's Preliminary Objections on the basis that a written assignment had not been attached to the Complaint and on the basis that Washington Mutual "lack[ed] capacity to sue" Pamela Shivone. See the November 6, 2006 Order attached as Exhibit 18. The Court additionally granted Washington Mutual 20 days to file an Amended Complaint.

146. On or about November 29, 2006, Washington Mutual filed an Amended Complaint against Pamela and Richard Shivone. Exhibit 19.

147. The Amended Complaint attached the September 25, 2006 assignment. However, in the body of the Complaint, Washington Mutual did not state the date of the assignment and only stated that it had been recorded on October 26, 2006 thereby creating the false impression and the illusion that the assignment preexisted the 2006 Mortgage Foreclosure Action but

was not recorded until October 26, 2006.

148. The Amended Complaint also attached the January 19, 2006 Act 91 Notices improperly issued by Washington Mutual as Washington Mutual was not the Mortgagee at the time the Act 91 notices were issued.

149. On December 18, 2006, Counsel for Ms. Shivone filed Preliminary Objections to the Amended Complaint alleging, *inter alia*, that the Act 91 notices were improperly issued as Washington Mutual was not a mortgagee until 9 months after the Act 91 notices were issued. Exhibit 20.

150. Also, on December 18, 2006, Counsel for Ms. Shivone wrote to counsel at PH&G for Washington Mutual asking that the action be withdrawn as follows:

> As you know, I represent Pamela Shivone in the above-captioned matter. Under separate cover, I am sending you a copy of Mrs. Shivone's Preliminary Objections to your Amended Complaint.

> I must say that I have been quite astounded by Washington Mutual's conduct and the conduct of your firm in handling this matter. In this regard, you should know that, at the time you were attempting to serve Mrs. Shivone in this matter, your process server left a notice on June 6, 2006 on Mrs. Shivone's property, stating "You have officially been served a legal notice by a lawful process server authorized by BUCKS-PHILADELPHIA COUNTY SUPERIOR COURT. SUPERIOR COURT DOCUMENTS must be delivered to you within FIVE (5) BUSINESS DAYS." This notice was obviously false as Mrs. Shivone had not yet been served and as there is no such thing as the "Bucks-Philadelphia Superior Court." Moreover, that "legal notice" did not have the appropriate language under the Fair Debt Collection Practices Act or its Pennsylvania analog (which makes both the debt collector and the creditor liable).

> Compounding this abusive attempt at service, was your client's filing of this matter prior to the point and time in which it had been assigned the mortgage. In this regard, Exhibit "C" to the Amended

Complaint makes clear that there was no assignment until September 26, 2006. Accordingly, your client, through your office, filed this action when it had no capacity to sue, did not own the mortgage and/or did not have a valid assignment of the mortgage. This is a clear abuse of process and a further violation of the Fair Debt Collection Practices Act and its Pennsylvania analog. Moreover, as noted in the Preliminary Objections, the plaintiff has not complied with the statutory notice requirements as any purported notice was improperly issued prior to your client being an assignee of the mortgage.

This letter is to put defense counsel and Washington Mutual on notice that Mrs. Shivone reserves the right and intends to sue Washington Mutual and its counsel for, *inter alia*, violations of the Fair Debt Collection Practices Act, abuse of process, and under any other viable theory for the damages caused to Mrs. Shivone and whatever damages may continue to accrue. In this regard, I urge you and Washington Mutual to drop any action against Mrs. Shivone on an immediate basis so as to mitigate the damages caused. Please get back to me within the next week to inform me as to whether or not you will dropping the action as against Mrs. Shivone.

Exhibit 21.

151. On January 5, 2007, Francis Hallinan, Esquire of PH&G on behalf of Washington Mutual filed a Praecipe to withdraw the Complaint in the Underlying Matter and mark the action discontinued and ended without prejudice. Exhibit 22.

152. Upon information and belief, despite the fact that Washington Mutual had not been a lawful assignee of the Mortgage and therefore had no actual ownership in the Mortgage prior to September 25, 2006, Washington Mutual (and possibly Shapiro & Kreisman and PH&S) has been inaccurately informing credit reporting agencies (including Experian, Trans Union and Equifax) that Washington Mutual was the mortgage holder and that Pamela Shivone was delinquent on a mortgage held by Washington Mutual.

**DAMAGES**

153. As a result of the foregoing, Pamela Shivone has been forced to incur legal costs and expenses.

154. As a result of the foregoing, Pamela Shivone has suffered a loss of credit and credit worthiness.

155. As a result of the foregoing, Pamela Shivone has suffered emotional distress, anxiety, embarrassment, humiliation and other unliquidated damages.

156. As a result of the foregoing, Plaintiff experienced great shock, concern, anxiety, sleeplessness, weeping, apprehension, fear, dread, panic, trepidation and other damages.

157. Plaintiffs' emotional damages were heightened because she is a single parent struggling to make ends meet and was , inter alia, concerned about incurring legal and other expenses and losses as a result of defendants actions and would have to go into even greater debt. Moreover, Plaintiffs' concerns, anxiety, etc., were also heightened as she has a daughter with special needs and is struggling to provide a secure and safe environment for her daughter.

**COUNT I**
**VIOLATION OF**
**FAIR DEBT COLLECTION PRACTICES ACT,**
**15 U.S.C. § 1692, ET . SEQ.;**

**PLAINTIFF V. WASHINGTON MUTUAL, WMHLI, PH&S, PHELAN, HALLINAN, MERS, SHAPIRO & KREISMAN, LOGS, REJENT, FEIN, SHAPIRO, KREISMAN AND FANDO f/k/a LOGS FINANCIAL**

158. All prior and subsequent paragraphs are incorporated as if set forth fully herein.

159. Each of the defendants named in this count are "debt collector[s]" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6), and/or have described themselves as debt collectors to Plaintiff and therefore admitted that they are debt collectors under subject to the FDCPA.

160. Plaintiff is and was a "consumer" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(3).

161. Defendants have violated the provisions of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq. ("FDCPA") by their actions as set forth in this Complaint including, but not limited to, (1) the use of false, deceptive or misleading means to collect a debt; (2) the use of used unfair and/or unconscionable means to attempt to collect a debt; (3) communicating to credit information which was known, or should have been known, to be false; (4) the false representation that documents are legal process; (5) the false representation or implication that accounts have been turned over to innocent purchasers for value; (6) the use of a business, company or organization name other than the true name of the debt collector's business, company or orgaization; and/or (7) failing to accurately disclose the name of the present assignee(s) of the Mortgage.

162. Plaintiff has been injured by the Defendants' violations of the FDCPA.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each of the Defendants, jointly and severally, for all damages allowed under the Federal Fair Debt Collection Practices Act included, actual damages, statutory damages, costs of including reasonable attorneys for this action, interest and any other damages allowed by law.

## COUNT II
## VIOLATION OF
## PENNSYLVANIA'S FAIR CREDIT EXTENSION UNIFORMITY ACT,
## 73 P.S. § 2270 ET. SEQ.

## PLAINTIFF V. PLAINTIFF V. WASHINGTON MUTUAL, WMHLI, PH&S, PHELAN, HALLINAN, MERS, SHAPIRO & KREISMAN, LOGS, REJENT, FEIN, SHAPIRO, KREISMAN AND FANDO f/k/a LOGS FINANCIAL

163.    All prior and subsequent paragraphs are incorporated as if set forth fully herein.

164.    Each of the defendants are "debt collector[s]" and/or "creditor[s]" within the meaning of the Pennsylvania Fair Credit Extension Uniformity Act ["PFCEUA"], 73 Pa.C.S.A § 2270.3.

165.    Plaintiff was a "consumer" within the meaning of the Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa.C.S.A § 2270.3.

166.    Defendants, to the extent they acted as debt collectors, are liable for their violations of the Federal Fair Debt Collection Practices under Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa.C.S.A § 2270.4(a).

167.    Defendants are liable for their their actions described herein which constitute violations of the PFCEUA.

168.    Plaintiff has been injured by the Defendants' violations of the PFCEUA.

    **Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each of the Defendants, jointly and severally, for all damages allowed under the Pennsylvania Fair Credit Extension Uniformity Act included, actual damages, statutory damages, costs of including reasonable attorneys for this action, interest and any other damages allowed by law.

## COUNT IV

## WRONGFUL USE OF CIVIL PROCEEDINGS

### PLAINTIFF V. WASHINGTON MUTUAL, PH&S, PHELAN, HALLINAN, MERS, SHAPIRO & KREISMAN, LOGS, REJENT, FEIN, SHAPIRO, KREISMAN AND FANDO f/k/a LOGS FINANCIAL

169.    All prior and subsequent paragraphs are incorporated as if set forth fully herein.

**The 2004 Mortgage Foreclosure Action**

170.    The Defendants Washington Mutual, MERS, Shapiro & Kreisman, LOGS, Rejent, Fein, Shapiro, Kreisman and Fando f/k/a Logs Financial all took part in the procurement, initiation and/or continuation of the 2004 Mortgage Foreclosure Action against Plaintiff.

171.    The Defendants Washington Mutual, MERS, Shapiro & Kreisman, LOGS, Rejent, Fein, Shapiro, Kreisman and Fando f/k/a Logs Financial had no basis in fact or in law to support the 2004 Mortgage Foreclosure action.

172.    The 2004 Mortgage Foreclosure Action was based upon facts which the Defendants Washington Mutual, MERS, Shapiro & Kreisman, LOGS, Rejent, Fein, Shapiro, Kreisman and Fando f/k/a Logs Financial knew, or should have known were false and could not be supported by evidence.

173.    The Defendants Washington Mutual, MERS, Shapiro & Kreisman, LOGS, Rejent, Fein, Shapiro, Kreisman and Fando f/k/a Logs Financial each acted in a grossly negligent manner and/or without probable cause with respect to the 2004 Mortgage Foreclosure Action.

174.    The Defendants Washington Mutual, MERS, Shapiro & Kreisman, LOGS, Rejent, Fein,

Shapiro, Kreisman and Fando f/k/a Logs Financial each acted primarily for a purpose other than that of securing the proper discovery, joinder of parties and/or adjudication of the claim in which the 2004 Mortgage Foreclosure Action proceedings were based.

175. The 2004 Mortgage Foreclosure Action was terminated in Plaintiff's favor.

176. Plaintiff has been injured by the Defendants' action with respect to the wrongful procurement, initiation and/or continuation of the 2004 Mortgage Foreclosure Action. Plaintiff's injuries include, harm to her reputation and/or credit worthiness as a result of the defendants actions, pecuniary loss, and emotional distress, the damages described elsewhere in this Complaint and other damages.

**The 2006 Mortgage Foreclosure Action**

177. The Defendants Washington Mutual, PH&S, Phelan, and Hallinan all took part in the procurement, initiation and/or continuation of the 2006 Mortgage Foreclosure Action against Plaintiff.

178. The Defendants Washington Mutual, PH&S, Phelan, and Hallinan had no basis in fact or in law to support the 2006 Mortgage Foreclosure action.

179. The 2006 Mortgage Foreclosure Action was based upon facts which the Defendants Washington Mutual, MERS, Shapiro & Kreisman, LOGS, Rejent, Fein, Shapiro, Kreisman and Fando f/k/a Logs Financial knew, or should have known were false and/or could not be supported by evidence and/or had no basis in law.

180. The Defendants Washington Mutual, PH&S, Phelan, and Hallinan each acted in a grossly

negligent manner and/or without probable cause with respect to the 2006 Mortgage Foreclosure Action.

181. The Defendants Washington Mutual, PH&S, Phelan, and Hallinan each acted primarily for a purpose other than that of securing the proper discovery, joinder of parties and/or adjudication of the claim in which the 2006 Mortgage Foreclosure Action proceedings were based.

182. The 2006 Mortgage Foreclosure Action was terminated in Plaintiff's favor.

183. Plaintiff has been injured by the Defendants' action with respect to the wrongful procurement, initiation and/or continuation of the 2006 Mortgage Foreclosure Action. Plaintiff injuries include, harm to her reputation and/or credit worthiness as a result of the defendants actions, pecuniary loss, incurring legal and other expenses, emotional distress, damages described elsewhere in this Complaint and other damages.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each of the Defendants to this count, jointly and severally, for compensatory and punitive damages and any other damages allowed by law in an amount in excess of $75,000.

**COUNT III**
**ABUSE OF PROCESS**
**PLAINTIFF V. WASHINGTON MUTUAL, PH&S, PHELAN, HALLINAN, MERS, SHAPIRO & KREISMAN, LOGS, REJENT, FEIN, SHAPIRO, KREISMAN AND FANDO f/k/a LOGS FINANCIAL**

184. All prior and subsequent paragraphs are incorporated as if set forth fully herein.

185. The defendants abused process by their involvement in the 2004 and 2006 Mortgage Foreclosure Actions.

186. Plaintiff has been harmed by defendants' conduct.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each of the Defendants, jointly and severally, for compensatory and punitive damages and any other damages allowed by law in an amount in excess of $75,000.

## COUNT V
## CIVIL CONSPIRACY

### Plaintiff v. All Defendants

187. All prior and subsequent paragraphs are incorporated as if set forth fully herein.

188. Upon information and belief, each of the Defendants acted in concert with at least one other party to commit unlawful act(s) upon plaintiff and/or to commit lawful act(s) upon Plaintiff by unlawful means.

189. Upon information and belief, there was one or more agreement(s) amongst and/or between the Defendants to inflict a wrong against or injury upon Plaintiff.

190. Upon information and belief, the wrongful filings of the 2004 and 2006 Mortgage Foreclosure Actions and the other conduct described in this Complaint were actions taken in furtherance of Defendants' conspiracy(ies).

191. Upon information and belief, defendants intended to injure Plaintiff.

192. Upon information and belief, Defendants actions as set forth herein were without justification.

193. Plaintiff has been injured by Defendants' conduct as described herein.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each of the Defendants, jointly and severally, for compensatory and punitive damages and any other damages allowed by law in an amount in excess of $75,000.

## COUNT VI
## AIDING AND ABETTING TORTIOUS CONDUCT
## RESTATEMENT (SECOND) OF TORTS § 876

### PLAINTIFF V. ALL DEFENDANTS

194. All prior and subsequent paragraphs are incorporated as if set forth fully herein.

195. Each Defendant performed tortious act(s) in concert with other Defendants pursuant to a common design with some or all of the other Defendants.

196. Additionally, and/or alternatively; each Defendant had knowledge that another Defendants' conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the other Defendant;

197. Additionally, and/or alternatively; each Defendant gave substantial assistance to other Defendant(s) in accomplishing a tortious result and such Defendant's conduct, separately considered, constituted a breach of duty to Plaintiff.

198. Plaintiff was injured by the Defendants' conduct including, there concerted actions.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each of the Defendants, jointly and severally, for compensatory and punitive damages and any other damages allowed by law in an amount in excess of $75,000.

---

## COUNT VII
## VIOLATION OF THE
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## 73 PA.C.S.A § 201-1 et. seq

### Plaintiff v. All Defendants

199. All prior and subsequent paragraphs are incorporated as if set forth fully herein.

200. Defendants have each violated the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A § 201-1 et. seq ("CPL").

201. Defendants violations include, at a minimum, a violation of section 201-2(4)(xxi) which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  See e.g. Flores v. Shapiro & Kreisman, 246 F.Supp. 2d. 427, 431-432.

202. Plaintiff has suffered damages as a result of Defendants' violations of the CPL.

WHEREFORE,  Plaintiff respectfully requests that the Court enter Judgment against each of the Defendants, jointly and severally, for all damages allowed under the Unfair Trade Practices and Consumer Protection Law, including actual damages, treble damages, statutory damages, costs including reasonable attorneys for this action, interest and any other damages

allowed by law.

---

**COUNT IX**
**FRAUD/MISREPRESENTATION**

**PLAINTIFF V. FULL SPECTRUM LEGAL SERVICES, INC.**

203.  All prior and subsequent paragraphs are incorporated as if set forth fully herein.

204.  As set forth above, on or about June 6, 2006, Plaintiff found a notice hanging from the door

   to her residence at 10911 Nandina Court stating as follows:

**LEGAL NOTICE!!!**
**Recipient: <u>Pamela Shivone</u>**

**You have officially been served a Legal**
**Notice by a Lawful Process Server**
**authorized by**

**BUCKS/PHILADELPHIA COUNTY**
**SUPERIOR COURT.**

**SUPERIOR COURT DOCUMENTS**
**Must be delivered to you within**
**FIVE (5) BUSINESS DAYS.**

**DOCKET NO: 000245**

**You must call the contact number listed**
**Below and make arrangements for**
**weekday delivery.  Documents will be**
**delivered during BUSINESS HOURS.**

**Only the named recipient or a household**
**member Age 18 or older may accept**
**service.**

**Documents no! delivered within Five (5)**

**Business Days will be returned to the
Superior Court as a**

**FAILURE TO ACCEPT
SERVICE.**

**(856) 889-6797
A.P.S. Mulvan**

Exhibit 14.

205.   This notice was false and misleading for a host of reasons including, but not limited to, the following:

a.   Ms. Shivone had not "officially been served a Legal Notice";

b.   The process served was not "authorized by BUCKS/PHILADELPHIA SUPERIOR COURT";

c.   There is no "BUCKS/PHILADELPHIA SUPERIOR COURT"

d.   The documents were not from the "SUPERIOR COURT";

e.   There was no reason why the "SUPERIOR COURT DOCUMENTS [or any other documents] Must be delivered to you within FIVE (5) Business Days";

f.   The Docket number referenced was incomplete;

g.   It was false that Ms. Shivone "**must** call the contact number listed" in the Noticee and "make arrangements for weekday delivery .. During business hours" (emphasis supplied).

h.   It was not true that "only the named recipient or a household member age

59

18 or older may accept service"

i.    It was not true that "documents not delivered within Five (5) Business Days will returned to the Superior Court [or any court] as a FAILURE TO ACCEPT SERVICE"

206.    Upon receiving this abusive notice from Defendant FSLS, and in reliance upon the truth of the notice, Plaintiff experienced great anxiety, sleeplessness, crying, apprehension, fear, dread, panic, trepidation and other damages. Plaintiff felt scared and threatened by the wording of the notice and understood from the notice that she needed to take immediate action within five (5) days to prevent immediate harm to herself and her daughter or to prevent being in jeopardy with the Court.  Further, since Plaintiff had never had any dealings in Bucks County which she thought could be the subject of litigation, she was afraid of additional legal and credit problems and concerned about her ability to pay lawyers if necessary in Bucks county.  Plaintiff was also concerned that there was an unknown action looming in the "Bucks/Philadelphia Superior Court".

207.    In reliance upon this notice, Plaintiff called the telephone number on the notice and  spoke, upon information and belief, with a representative of Defendant FSLS to inform FSLS the times when she is usually home hoping to avoid any jeopardy.

208.    Plaintiff incurred legal expenses as a result of the issuance of this false and misleading notice.

209.    Defendant FSLS made a representation to Plaintiff, material to the transaction at hand, which was false and known to be false (and/or made recklessly) with the

intent of misleading Plaintiff into relying on it. Plaintiff justifiably relied upon Defendants' misrepresentation; and was injured thereby.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against Full Spectrum Legal Services for compensatory and punitive damages and any other damages allowed by law in an amount in excess of $75,000.


## COUNT X
## NEGLIGENT MISREPRESENTATION

### PLAINTIFF V. FULL SPECTRUM LEGAL SERVICES, INC.

210. All prior and subsequent paragraphs are incorporated as if set forth fully herein.

211. As an alternative to the Fraud count above, Defendant FSLS made a negligent misrepresentation to Plaintiff.

212. Upon information and belief, as a process server, FSLS had a duty (or there should be a duty) to attempt to make proper service upon plaintiff and not to harass her or provide false and/or misleading information.

213. Defendant FSLS violated its duty to Plaintiff and provided her false information.

214. Plaintiff has been injured by FSLS's actions

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against Full Spectrum Legal Services for compensatory damages and all other damages allowed by law in an amount in excess of $75,000.

## COUNT XI
## NEGLIGENT SUPERVISION

## <u>PLAINTIFF V. ALL DEFENDANTS</u>

215.    All prior and subsequent paragraphs are incorporated as if set forth fully herein.

216.    Each defendant had a duty to properly supervise their employees and/or agents to make sure they acted lawfully and appropriately with respect to Plaintiff's foreclosure proceedings.

217.    Each Defendant negligently supervised their employees and/or agents.

218.    The Defendants' negligent supervision caused Plaintiff's injuries.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each defendant for compensatory damages and any other damages allowed by law in an amount in excess of $75,000.

## COUNT XII
## VICARIOUS LIABILITY

## <u>PLAINTIFF V. ALL DEFENDANTS</u>

219.    All prior and subsequent paragraphs are incorporated as if set forth fully herein.

220.    Each defendant in this case is responsible for the wrongful and/or tortious actions of their employees, subcontractors, representatives and agents.

221.    Plaintiff has been harmed by the actions of the agents of each of the defendants.

**Wherefore**, Plaintiff respectfully requests that the Court enter Judgment against each defendant for compensatory and punitive damages, as appropriate, and any other damages allowed by law in an amount in excess of $75,000.

NEIL E. JOKELSON & ASSOC., P.C.

_____ NEJ 2239
NEIL E. JOKELSON, ESQUIRE
DAVID E. JOKELSON, ESQUIRE
DEREK E. JOKELSON, ESQUIRE

230 South Broad Street, 8th Floor
Philadelphia, PA 19102

*Attorneys for Plaintiff*